CHAPTER	11
DATE:	February 26, 2010
JUDGE:	Margaret Dee McGarity
CASE NO.:	09-32985-MDM
DEBTOR:	Wolverine Fire Apparatus Co. of Sherwood Michigan
NATURE OF HEARING:	(1) Decision on debtor's and Receiver Michael Polsky's objections to Packer City International Trucks, Inc.'s motion for relief from the automatic stay (or adequate protection).
(2) Adjourned (from 9/25, 9/30, 10/14, 10/29, 11/19, 12/17/09, and 2/25/10) hearing on debtor's motion to use cash collateral and Receiver Michael Polsky's motion to prohibit use of cash collateral or, in the alternative, for relief from the automatic stay.
APPEARANCES:	Joseph Engl, Attorney for Debtor in Possession
Shane Williams, President & CEO of Debtor
William Malek, Witness for Debtor
Dorothy Dey, Attorney for Receiver Michael Polsky
Craig Graff, Witness for Receiver
Christina Peterson, Attorney for Packer City Int'l Trucks (telephone)
Amy Ginsberg, Trial Attorney for US Trustee
LAW CLERK:	Kris Trapp
TIME:	10:22 am - 12:05 pm; 1:09 pm - 6:37 pm

Decision on debtor's and Receiver Michael Polsky's objections to Packer City International Trucks, Inc.'s motion for relief from the automatic stay (or adequate protection).

*Nature of the collateral.* The truck chassis is not an asset subject to DMV title provisions, as that chapter does not apply to a manufacturer that holds vehicles for sale. *See* Wis. Stat. § 342.02(3). Title 9 of the Uniform Commercial Code applies to these transactions. The relevant provisions of the UCC are the same under Wisconsin, Michigan, and Delaware law, so no distinction need be made. Accessions made by the debtor could be removed if different parties had rights in the accessions made by the debtor and the original chassis. UCC § 9-355(4).

*The rights of Packer City International Trucks in the collateral.* As a general matter, the location of the debtor determines the jurisdiction whose law governs perfection of a security interest. UCC § 9-301. A registered organization that is organized under the law of a state is located in the state in which it is organized. UCC § 9-307. Packer City filed its UCC statement in Wisconsin. The debtor is registered in Michigan. Consequently, Packer City's interest in the collateral is subordinate to the receiver's properly perfected security interest in Michigan.

*The rights of International Truck and Engine Corporation/Navistar Financial Corporation in the collateral.* On March 19, 2003, International Truck filed a UCC Financing Statement against Packer City International in Delaware. The UCC Statement was amended on January 21, 2004, to include the subject collateral. The security agreement was never terminated or released. On December 8, 2008, Packer City delivered the subject chassis to Wolverine.

Packer City and Wolverine agreed that title to the chassis would remain with Packer City. However, at least as it relates to the rights of third parties, UCC § 9-401(1) provides that retention of title results in a security interest. Thus, ownership passed to the buyer, Wolverine, subject to the security interest of Packer City. That interest was superceded by the receiver. The question is, then, whether International's security interest in Packer City's asset followed that asset in the possession of Wolverine.

1

If Packer City is regarded as selling truck chassis in the ordinary course of its business, the buyer, Wolverine, would not take the chassis subject to International's security interest. UCC § 9-320(1). International would only have a security interest in Packer City's receivable from the debtor.

If the transfer is not considered in the ordinary course of business, the purchaser of a secured asset may take that asset subject to the security interest of the seller's secured creditor. UCC §§ 9-201(1), 9-508(1). Title to the collateral is immaterial. UCC § 9-202. Section 9-325 provides for the effect of a security interest in collateral transferred to another person. The security interest will continue if (a) the debtor acquired the collateral subject to the security interest; (b) the security interest was perfected when the debtor acquired the collateral; and (c) the security interest did not subsequently become unperfected. Assuming for the moment International's interest in the chassis was not sold in the ordinary course of business, the first two requirements apply; the third does not.

When collateral is transferred, as happened here when it was sold by a Delaware corporation to a Michigan corporation, a perfected security interest remains perfected for one year. UCC § 9-316(1)(c). If it is not perfected in the new jurisdiction, it is treated as never having been perfected. UCC § 9-316(2). The chassis was sold to Wolverine in December, 2008. Since International did not perfect its interest by December, 2009, its prior perfection has now lapsed.

One commentator has explained the "double debtor" issue as follows:

> If collateral in which a secured party has a security interest perfected by filing under the law of the jurisdiction of the location of the debtor is transferred to a person who thereby becomes a debtor, the filing remains effective to continue the perfection of the security interest. It does not matter whether the secured party knew of the transfer or authorized the transfer, so long as the secured party did not authorize that the transfer be made free of the security interest. §9-507(a); see §9-315(a)(1).                . . .
>
> However, if the transferee debtor is located in a jurisdiction different from that of the transferor debtor, the secured party has a period of one year (or until the expiration of any earlier period in which the perfection of the security interest would lapse under the law of the transferor debtor's jurisdiction) to perfect the security interest under the law of the jurisdiction of the location of the transferee debtor in order for the secured party to maintain the perfection of its security interest beyond that period. §9-316(a)(3); see §9-509(c) for the secured party's authority to file a financing statement against the transferee debtor in the new jurisdiction. If the security interest is not perfected against the transferee debtor in that jurisdiction during that period, it is deemed never to have been perfected against a purchaser for value. §9-316(b).

Edwin E. Smith, *The Resolution of "Double Debtor" Issues Under Revised UCC Article 9*, 904 PLI/Comm 249 (2008).

At one time, a bankruptcy tolled the perfection period, and in this case Wolverine's bankruptcy filing took place before International's perfection lapsed, and the lapse occurred postpetition. The current UCC, however, does not provide for tolling in this instance:

> Effect of Debtor's Bankruptcy. Under former Section 9-403(2), lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding. Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled. Subsection (c) deletes the former tolling provision and thereby imposes a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy. The secured party can prevent lapse by filing a continuation statement, even without first obtaining relief from the automatic stay. See Bankruptcy Code Section 362(b)(3). Of course, if the debtor enters bankruptcy before lapse, the provisions of this Article with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of

the filing of the bankruptcy petition).

UCC § 9-515 Comments ¶ 4. Because this Court has been asked to determine the competing creditors' respective rights in the collateral – not the rights of a trustee or hypothetical bona fide purchaser in the collateral – the competing security interests are not determined as of the date of the petition.

*The rights of Michael Polsky, Receiver for Elite Fire Apparatus, Inc., and Moser Group, Inc., in the collateral.* The receiver perfected its security interest in Wolverine's assets by filing its financing statement on February 19, 2008. That perfection is not subordinate to the interests of either Packer City or International in the debtor's truck chassis.

The motion for relief from the automatic stay is therefore denied. Any adequate protection payments made to Packer City shall be turned over to the receiver. All adequate protection payments going forward shall be remitted to the receiver.

Ms. Dey will submit an order.

<u>Debtor's motion to use cash collateral and Receiver Michael Polsky's motion to prohibit use of cash collateral or, in the alternative, for relief from the automatic stay</u>.

Willliam Malek, the debtor's business advisor, testified regarding the debtor's balance sheets, accounts receivables, cash flow, profit and loss statements, monthly financial reports, projected earnings, work in process, and inventory. The debtor's books and records contain material inaccuracies and the monthly operating reports need to be corrected. With proper accounting and cost control, the debtor can successfully organize.

Shane Williams, the debtor's CEO, testified regarding the debtor's inventory, records, work in process, and plans for reorganization. A vendor/dealer removed two chassis from the premises postpetition. Although the debtor's written inventory summary lists more, there are approximately 20 chassis and used fire trucks currently located at the debtor's premises.

Craig Graff, the receiver's accounting consultant, testified regarding the debtor's books and records. Mr. Graff conducted an on-site visit to the debtor's premises, but was denied access to the debtor's records and some of the assets. He opined that the debtor cannot continue to operate as a going concern and the receiver's collateral has been and continues to be consumed postpetition.

The court prohibited the use of the receiver's cash collateral and granted the receiver relief from the automatic stay. The receiver's inspector was denied access to the debtor's records and certain of its inventory, in violation of the court's previous order. Both Messrs. Malek and Graff were credible and qualified as experts. The evidence overwhelmingly shows gross mismanagement of the debtor's business, as well as the consumption of assets.

Ms. Dey will submit an order.

3